IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ANNA T. | § | |
| | § | |
| V. | § | C.A. No. _____ |
| | § | |
| GOLDEN RULE | § | |
| INSURANCE COMPANY | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

This is a suit for damages and other relief by Anna T., against Golden Rule Insurance Company. It is an action for breach of a health insurance policy, violations of the Texas Deceptive Trade Practices Act, violations of the Texas Insurance Code, and damages.

### Parties

1.    Plaintiff is a resident citizen of Austin, Texas. She brings this action to recover benefits for her treatment of a severe mental illness. Pursuant to Federal Rule 5.2, she is referenced as Anna T.

2.    Defendant Golden Rule Insurance Company ("Golden Rule") is a domestic or foreign corporation licensed to do business and doing business in the State of Texas. It may be served through its registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201-3136, or wherever it may be found.

### Jurisdiction and Venue

3.    This Court has jurisdiction over this civil action pursuant to 28 U.S.C. §1332(a)(1) since it is an action between citizens of two different states and the matter in controversy exceeds the sum of $75,000.

4.   Venue is proper in this District and Division pursuant to 29 U.S.C. §1132(e)(2) because Defendant maintains business activity in and are in this district.

## Facts

5.   Golden Rule is in the insurance business and sells various forms of health insurance, including short term health insurance. It underwrites many UnitedHealthcare branded insurance policies.[1] The promise of short-term health insurance is to pay for critical illnesses.

6.   Implicit in the promise of the Golden Rule is that it will timely, fairly, and objectively adjust and pay a covered claim. If in doubt about the cause or nature of the insured's health condition, Golden Rule implicitly promises to investigate the claim fairly and objectively and promptly pay if the claim meets the policy requirements.

Policy Terms

7.   Anna was at all relevant times a covered beneficiary under an individual health insurance policy purchased by her father, Alain T, policy no. G22HS12007, certificate no. 058-538-046 (the "Policy"). Golden Rule insured the Policy. It had an effective date of December 1, 2007.

8.   The Policy provided both in-network and out-of-network benefits for medical treatment, which it referred to as "preferred providers" and "non-preferred providers".  These benefits applied to behavioral health treatment center expenses.

9.   The Policy established an allowable amount it would pay for eligible expenses incurred. The Policy permitted Golden Rule to establish allowable amounts for

---

[1] https://www.uhone.com/

medically necessary expenses payable to both preferred providers and non-preferred providers.

10.    The Policy provided coverage for behavioral health services on an inpatient and outpatient service basis. It provided coverage for serious mental illness on an inpatient and outpatient basis. Finally, it provided for intermediate behavioral health treatment.

11.    The Policy also provided that all services and supplies for which benefits would be available must be medically necessary as determined by Golden Rule. It defined the term "medical necessity".

## Health History

12.    Growing up, Anna was a normal child. As an only child, she always received attention and love from both parents. In school, she was always at the top of her class. She attended a magnet middle school in Austin and was accepted to another magnet high school.

13.    However, as soon as her freshman year started, she began showing signs of anxiety and depression. She started focusing on a small group of friends from another high school. She began to show troublesome behavior, like sneaking out of the house at night and using drugs. Her grades began to suffer, and she started skipping school. When confronted, Anna would get verbally aggressive, defiant, and withdraw.

14.    At the same time, there were mornings when she would refuse to get up. She had periods without energy, motivation, or focus. To improve things, she was transferred to a less demanding high school and went to a therapist. Once she changed schools, she had a hard time fitting in in her new social environment.

Anna tried another therapist. The therapist recommended admission to an outpatient service in Austin, but Anna refused to go.

15.    She continued to skip school and escalated her drug use. When her parents tried to confront her, Anna ran away from home for three days and stayed at a friend's house. By the end of January 2020, she refused to go back to school. Her parents knew that drastic action was needed. They contacted and Anna's therapist, who helped find the best place to treat her.

16.    This is how Anna ended up at BlueFire Wilderness Therapy, followed by residential treatment at Vista from May to December 2020.

Treatment at blueFire Wilderness Therapy

17.    Anna was admitted to blueFire Wilderness Therapy ("blueFire") on February 26, 2020.

18.    Among other things, she suffered from anxiety, depression, substance abuse, unhealthy family dynamics, poor coping skills, and academic problems.

19.    blueFire is a premier wilderness therapy program for troubled teens and young adults struggling with emotional, social, and behavioral challenges.[2] Wilderness programs like blueFire provide long lasting solutions to teen behavioral and emotional challenges. It uses a comprehensive approach that combines clinical expertise, adventure experiences, academic assessments, and family systems.

20.    In short, blueFire helps teens overcome their challenges to become the best versions of themselves.

21.    Anna was discharged from blueFire on May 14, 2020.

---

[2] https://bluefirewilderness.com/

Treatment at Vista Sage

22.    Anna was admitted to Vista Sage RTC on May 14, 2020.

23.    She was an adolescent when admitted to Vista Sage and turned 18 in October 2020.

24.    Her treatment at Vista Sage involved, among other things, individual therapy, treatment for substance abuse, family therapy, and psychiatric treatment.

25.    Anna was discharged from Vista Sage on December 3, 2020.

Claims and Appeals

26.    On November 9, 2020, Golden Rule denied coverage for Anna's stay at Vista Sage on the basis that additional treatment was not medically necessary. In doing so, Golden Rule argued that Anna could have been treated at an intensive outpatient level of care instead.

27.    On December 31, 2020, Golden Rule denied coverage for Anna's stay at blueFire on the basis that additional treatment was not medically necessary. In doing so, Golden Rule argued that Anna could have been treated at an unspecified "less restrictive setting".

28.    On April 30, 2021, Anna's parents submitted an appeal to Golden Rule for its denial of coverage at Vista Sage. Including medical records and other appeal exhibits, the appeal totaled 1,008 pages.

29.    Twelve days later, Anna's parents submitted an appeal to Golden Rule for its denial of coverage at blueFire. Including medical records and other appeal exhibits, the appeal totaled 377 pages.

30.     Golden Rule outsourced its utilization review to UnitedHealthcare Life Insurance Company ("UnitedHealthcare"), its parent company.[3]

31.     Golden Rule and/or UnitedHealthcare denied the blueFire appeal on June 9, 2021.

32.     Golden Rule and/or UnitedHealthcare denied the Vista Sage appeal 10 days later.

33.     Golden Rule denied Anna's treatment because it claimed the treatment was not medically necessary. It argued that she did not exhibit acute psychiatric symptoms, like risk of harm to self or others and lack of suicidal or homicidal ideations.

Golden Rule Relies on Defective MCG Guidelines

34.     In denying both appeals, Golden Rule asserted that Anna did not satisfy criteria articulated by the MCG Health Residential Acute Behavioral Health Level of Care Guideline ("MCG Guideline").

35.     The MCG Guideline, which is developed by MCG Health, a for-profit publisher, is fatally defective and inconsistent with generally accepted standards of medical practice. MCG Health's guideline development process is not transparent, and its guidelines are inaccessible to the public. MCG Health and its insurer customers rely on this secretive process, in which financial conflicts of interests shape the criteria enumerated in the MCG Guideline. Because the MCG Guideline is developed as a cost-management tool for the insurance industry, it is not warranted to conform to the terms of any specific insurance policy or to state and/or federal laws.

36.     Golden Rule knows that the MCG Guideline is defective. The criteria enumerated therein are applicable to acute, involuntary psychiatric hospitalization – not to

---

[3] UnitedHealthcare acquired Golden Rule in 2003.

voluntary, sub-acute residential mental health treatment. Additionally, in 2017, the editor of the MCG Guideline authored a white paper, "Mental Health Parity: Where We Have Come From? Where Are We Now," that highlighted MCG Health's fundamental misconception of the purpose of intermediate levels of behavioral health care, which include residential treatment. The MCG Health white paper, which was not distributed by Golden Rule to any of its insureds, improperly contends that, rather than improve functional status in people with impairments that are not acute, intermediate behavioral health services are merely intended to avert hospitalization or stabilize acute crises.

37.    This premise was rejected by a federal court in *David Wit et al., v. United Behavioral Health*[4], a case where UnitedHealthcare's proprietary clinical guidelines were found to violate generally accepted standards. These violations included (1) overemphasizing acuity and crisis stabilization over effective treatment of the patient's underlying condition, (2) failing to address the effective treatment of co-occurring conditions, (3) failing to err on the side of caution in favor of a higher level of care when there is ambiguity, (4) pushing patients to lower levels of care where such a transition is safe even if the lower level of care is likely to be less effective, (5) failing to address the unique needs of children and adolescents to receive intensive treatment over a sustained period of time, and (6) imposing mandatory prerequisites rather than a multidimensional approach.[5]

---

[4] C.A. No. 3:14-cv-02346-JCS, 2019 WL 1033730 (N.D. Cal. Mar. 5, 2019).

[5] Although the Ninth Circuit overruled the district court in an unpublished opinion on March 22, 2022, it is currently reviewing motions for rehearing *en banc*.

38. The use of the defective MCG Guideline has also led to a class-wide recovery for ERISA participants and beneficiaries. *Doe et al v. Health Care Service Corporation*, C.A. 1:16-cv-04571 (N.D. Ill. 2018). Anna was not a class member entitled to relief in *Doe* because the Policy did not fall under ERISA.

39. On May 23, 2022, Anna sent a demand letter to Golden Rule.

40. The Policy provides that an insured must send a demand letter and wait 30 days before filing suit, otherwise she waives all extra-contractual claims.

41. Anna filed this suit more than 30 days after sending her demand letter to Golden Rule. She has not waived her extra-contractual claims in this matter.

42. Having exhausted all administrative remedies, Anna brings this action to recover the health insurance benefits promised in the Policy.

## Breach of the Insurance Contract

43. Plaintiff incorporates the preceding factual allegations.

44. At all material times, the Policy was in full force and effect. All of the premium payments were timely paid by Anna's father. Anna and her parents provided Golden Rule with the information and evidence needed to cover her treatment at blueFire and Vista Sage. However, Golden Rule breached its duty under the Policy by failing and refusing to pay for that covered treatment.

45. Plaintiff and her parents were forced to pay for the treatment at blueFire and Vista Sage entirely out of pocket. The treatment at blueFire totaled $44,635. The treatment at Vista Sage totaled $163,200. After applicable copays, Anna is owed at least $207,835 in reimbursement for her medically necessary treatment at blueFire and Vista Sage, for which she now sues.

## Breach of Duty of Good Faith and Fair Dealing

46.    Plaintiff incorporates the preceding factual allegations.

47.    Insurers have an affirmative common law duty of good faith and fair dealing. That means that in the handling and adjustment of a claim, the insurer is obligated to act in good faith and deal fairly with the policyholder in delivering on the promise of the policy. Golden Rule was obligated to meet this common law obligation once a claim on the Policy was made.

48.    The guiding principles of proper claims handling help to ensure the insurer meets this obligation. Claims handling personnel must be adequately trained on these principles. These principles include an obligation to promptly acknowledge the claim, timely investigate the claim, and adjust that claim in a fair, objective, and non-biased manner.

49.    Timely adjustment and investigation mean seeking information and evidence to answer questions raised that may clarify the insurer's obligation to pay or deny the claim. Traditional claims handling principles also include a responsibility to find coverage, err in favor of the insured, resolve ambiguities and doubt in favor of the insured, and pay the claim if it meets the policy requirements for payment.

50.    An objective and thorough investigation includes inquiry into reasons to pay a claim, along with any reasons to deny the claim. The insurer must look at the positive and negative before making its claim decision. Claims decisions must be based on facts, not guesses or speculation. Artificial obstacles to payment, unreasonable interpretation of policy terms, speculation, outcome-oriented investigations, and bias should pay no role in delivery on its promise. In following these principles, the insurer is positioned to deliver on the promise of the policy. It is also positioned to meet its obligation of good faith and fair dealing.

51. Golden Rule failed to follow these claims handling principles. Its adjusters, on information and belief, lacked the requisite training to properly investigate and adjust this claim. They further failed to adjust this claim in a fair and equitable manner. They ignored their responsibility to find coverage or err or resolve doubts in favor of the insured and resolve ambiguities in favor of the insured. They failed to investigate and evaluate this claim objectively and fairly. They merely looked for a reason to deny, ignoring reasons to pay the claim. Golden Rule knew and endorsed this conduct. In addition, Golden Rule and its adjusters failed to acknowledge Anna's medically necessary care and instead denied this claim solely on guesswork and speculation.

52. Throughout this claim, Golden Rule failed to acknowledge in its communications with Plaintiff that the MCG Guideline it used to adjudicate his claim was fatally defective. Instead, Golden Rule presumably began and ended its investigation and adjustment of this claim with the MCG Guideline and other similarly archaic and defective processes. In doing so, it sought to find support for its conclusion that Anna's treatment was not medically necessary. This was the sole focus of any investigation Golden Rule undertook. It was an outcome-oriented focus seeking to find a reason for denial.

53. From the moment Golden Rule received Plaintiff's appeals, it knew or should have known that its conclusion that Anna's treatment was not medically necessary was wrong. It failed to conduct any investigation at all to support the basis of its denial. Its liability was thus reasonably clear.

54. Proper claims handling conduct requires the insurer, among other things, to work with the insured to find coverage. In this case, Golden Rule worked only to find

reasons to deny claims and to withhold reimbursement for intensive outpatient level of care or the unspecified "less restrictive setting" instead. Coverage could have easily been found if Golden Rule fully and fairly reviewed the appeals. Doing so would have led to only one conclusion: that Anna's treatment at blueFire and Vista Sage was medically necessary, and that reimbursement for the lesser included intensive outpatient level of care or the unspecified "less restrictive setting" it recommended should have issued when Golden Rule received Anna's claims. Her treatment was covered by the policy. Golden Rule's liability as of the time of its denial was thus reasonably clear.

55.     This conduct is a breach of its common law duty of good faith and fair dealing. Golden Rule had a duty to investigate, evaluate, and adjust Anna's claim fairly, objectively, and thoroughly. In this instance, its denial was made without any reasonable basis. At all material times, Golden Rule's liability was reasonably clear.

56.     Anna's parents did what few parents have to do: admit that their daughter needed professional help to treat her mental illness. They bought the Golden Rule policy to give them, and her, peace of mind if she needed medical treatment. Golden Rule took away that peace of mind. Anna and her parents relied on Golden Rule to investigate and adjust their claim in good faith honestly, objectively, and fairly. That reliance has been to their detriment. Golden Rule's breach of its common law duty of good faith and fair dealing instead caused Anna to suffer considerable emotional distress and mental anguish. This conduct further caused injury and damage to Anna, for which she further sues.

### Violations of the Texas Insurance Code

57.     Plaintiff incorporates the preceding factual allegations.

58.    The Texas Insurance Code prohibits, among other things, certain activity by an insurer in the handling and adjustment of claims for policy benefits. Its focus is on the insurers claims handling conduct. Golden Rule, in its handling and adjustment of Anna's claim, has engaged in just such prohibited unfair insurance claims practices in violation of Chapters 541 and 542 of the Texas Insurance Code. These unfair practices have also been committed knowingly. Golden Rule has committed, *inter alia*, the following unfair claims settlement practices:

i.    Misrepresenting to Plaintiff material facts or policy provisions relating to the coverage at issue;

ii.    Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim when its liability was reasonably clear;

iii.    Failing to promptly provide to Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for its denial of a claim or offer of a compromise settlement of a claim;

iv.    Refusing to pay a claim without conducting a reasonable investigation of the claim;

v.    Knowingly misrepresenting to Plaintiff pertinent facts or policy provisions relating to coverage at issue;

vi.    Failing to acknowledge with reasonable promptness pertinent communications relating to the claim arising under the policy;

vii.    Making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact, and failing to state those material facts necessary to make other statements made not misleading, considering the circumstances under which the statements were made; and

viii.    Golden Rule engaged in this conduct knowingly with actual knowledge of the falsity, unfairness, or deception of the foregoing acts and practices.

59.   These provisions of the Insurance Code are intended to protect insurance consumers from misleading or false statements about the policy or claim or compel the insurer to disclose material facts to avoid misleading the consumer. They are also intended to compel the insurer to promptly resolve claims when liability is reasonably clear. Golden Rule violated these provisions of the Insurance Code.

60.   Golden Rule claimed in the denial letter that Anna's residential treatment was not medically necessary. It also claimed that Anna had a lack of risk to self or others and lack of suicidal or homicidal ideations. These statements were misleading and were material to whether the claim was excluded. The statements were intended to mislead and did mislead Anna to a false conclusion about the Policy coverage.

61.   During her treatment, Anna needed professional help. She relied on Golden Rule to provide her protection and look out for her best interests. Golden Rule failed her in several ways.

62.   First, Golden Rule relied on unqualified medical reviewers to determine that Anna's treatment was not medically necessary.

63.   Golden Rule and/or UnitedHealthcare is accredited by the National Committee for Quality Assurance (NCQA). Health plan accreditation indicates that an insurer is committed to a high level of appeal review accuracy and accountability. Among other things, NCQA Guidelines require that Golden Rule and/or UnitedHealthcare use medical reviewers who are (1) in the same profession and in a similar specialty as typically manages the medical condition, procedure, or treatment as mutually deemed appropriate, (2) are neither the individual who made the original non-certification, nor the subordinate of such an individual, and (3) board certified.

64.     But Golden Rule redacted the medical reviews to block out the identity of the third-party medical review company, the alleged conflict of interest attestation, and the identity of the medical reviewer. For instance:



65.    There was no way for Anna to respond when Golden Rule intentionally redacted vital information relating to its review. The medical reviews are useless and can hold no weight at all.

66.    Second, Golden Rule intentionally used old and now unlawful criteria to impose acute severity of illness requirements on subacute or intermediate behavioral health treatment. *See Wit v. United Behavioral Health*.

67.    Before *Wit*, UnitedHealthcare still used Optum criteria, which was found to violate generally accepted medical standards. In its Remedies Order, the *Wit* court found:

> UBH denied mental health and substance use disorder treatment coverage to tens of thousands of class members using internal guidelines that were inconsistent with the terms of the class members health insurance plans. UBH engaged in this course of conduct deliberately, to protect its bottom line. To conceal its misconduct, UBH lied to state regulators and UBH executives with responsibility for drafting and implementing the guidelines deliberately attempted to mislead the Court at trial in this matter.

68.    As a result of its malfeasance, UnitedHealth was ordered to use criteria deemed by non-proprietary sources to be in accordance with generally accepted standards of medical practice. In September 2019, Optum indicated that it would finally adopt mental health guidelines that followed generally accepted levels of care. However, Golden Rule and UnitedHealthcare chose to keep using the following outdated guidelines in this claim:

• Optum: United Behavioral Health: Level of Care Guidelines: Document Number: BH803LOCG022019: Effective Date: 02/12/19
• MCG Criteria for Behavioral Health, 2019
• InterQual Guidelines: Child and Adolescent Behavioral Health

69.    Golden Rule represented to Anna that residential treatment was a covered benefit. In actuality, it systematically applied involuntary psychiatric hospitalization criteria to deny access to voluntary, sub-acute residential treatment.

70.     Golden Rule also represented to Anna that it administered intermediate mental health benefits in parity. In actuality, it applied acute care standards to residential treatment but did not extend those standards to intermediate medical benefits.

71.     Any claim by Golden Rule that it received no information to support the claim would be untrue. Anna and her parents provided Golden Rule all the information available. Even if Golden Rule believed it had no information to support Anna's claim, as a part of its duty to investigate and perform a reasonable investigation, it was obligated to inform its policyholder what specific information it needed to perfect their claim – particularly since Golden Rule admitted that, at a minimum, Anna required intensive outpatient treatment, a level of care subsumed by residential treatment. It failed to do so. Any investigation Golden Rule undertook cannot be reasonable or thorough without at least asking Anna and her parents for any information they might have to support their claim.

72.     At no time before this suit was filed did Golden Rule make any attempt, in good faith or otherwise, to settle the claim. Though it received the May 23, 2022 settlement demand, which clearly and unequivocally stated the facts in support of coverage of the claim, Golden Rule chose to ignore the demand entirely. It chose to ignore the facts. It chose to ignore its use of fatally defective guidelines and the equitable bases for coverage. Its liability was reasonably clear. Failing to try to promptly, fairly, and equitably settle this claim further violated the Insurance Code.

73.     At all material times, Golden Rule's conduct in this regard was intentional. It knowingly engaged in this conduct. It knew it had no factual basis upon which to deny the claims. Instead, it intentionally chose to ignore the factual and legal

evidence provided by Anna and her parents. It chose not to substantively respond to the settlement demand, remain silent, take no action, perform no investigation, and hope that Anna and her parents would simply go away.

74.    This conduct, along with Golden Rule's other acts and omissions, violated Texas Insurance Code §§541.001, et seq., 542.001, et seq., including the Insurance Code's provision for the prompt payment of claims, §542.051, et seq.

### Unconscionable Conduct

75.    Plaintiff incorporates the preceding factual allegations.

76.    Golden Rule also violated the Texas Deceptive Trade Practices - Consumer Protection Act, §§17.46, et. seq. by its misrepresentations and by engaging in, *inter alia*, unconscionable conduct and course of action. A glaring example was Golden Rule's intentional use of the fatally defective MCG Guideline with which to systematically deny medically necessary, long-term residential treatment. It was also unconscionable for Golden Rule to blindly rely on medical record reviewers lacking the appropriate education, training, or experience in relevant areas of medicine to the claim. In this claim, Golden Rule redacted the identifying information for its medical reviewer so that Anna would not be able to respond to its spurious conclusions.

77.    Golden Rule's conduct as demonstrated in this action is not isolated to this claim. On information and belief, this conduct is part of a common pattern and common practice toward other policyholders like Anna and her parents with health policies who submit mental health claims. This non-disclosure and deception is unconscionable, particularly since Golden Rule's victims are children and adolescents already struggling with emotional turmoil.

78.   Since at least February 2019, Golden Rule has known that its conduct, as well as that of its master, is illegal. *Wit v. United Behavioral Health*, C.A. No. 3:14-cv-02346-JCS, (N.D. Cal., February 28, 2019).

79.   Alain T. bought the Golden Rule policy to give peace of mind if his family needed medical treatment. Golden Rule took away that peace of mind. Anna and her parents relied on Golden Rule to investigate and adjust her claims in good faith honestly, objectively, and fairly. That reliance has been to her detriment. Golden Rule's breach of its common law duty of good faith and fair dealing instead caused Anna to suffer considerable emotional distress and mental anguish. This conduct further caused injury and damage to Plaintiff, for which she further sues.

## Knowing Conduct

80.   The conduct complained of in this action was engaged in knowingly, as that term is defined in Ch. 17 of the Texas Business and Commerce Code and Tex. Ins. Code §541.001(1). Golden Rule knew what it was doing. It knew its claims handling conduct violated provisions of the Texas Insurance Code. It knew of the false, misleading, and deceptive nature of its conduct in handling this claim. It chose to act in this manner anyway.

## Damages

81.   The acts, omission, and practices of Golden Rule constituting a tort were the proximate cause of the damages sustained by Plaintiff. All of Golden Rule's acts and practices in violation of the various statutes herein recited were the producing cause of the actual damages suffered by Plaintiff, including, but not limited to, damages for mental anguish and emotional distress, as well as actual damages

under the insurance contract. For all of these wrongful acts, omissions, and practices, Plaintiff is entitled to money damages as may be found by the jury.

82. The acts, omissions, and practices of Golden Rule constituting a tort herein warrant the imposition of 18% interest per annum pursuant to Tex. Ins. Code §542.060, *et seq*.

83. Golden Rule's actions in handling of Plaintiff's claim were done knowingly and intentionally or with a conscious or callous disregard for Plaintiff's rights and welfare. As such, its actions reflected gross negligence and were so outrageous as to warrant the imposition of punitive or exemplary damages, for which Plaintiff further sues for recovery. Plaintiff seeks such punitive or exemplary damages as may be assessed by the jury in its discretion.

84. Plaintiff also requests, in addition to the benefits withheld, prejudgment interest on any such award. She is entitled to prejudgment interest as additional compensation, and pursuant to Tex. Ins. Code §542.060, or on principles of equity.

85. The Policy does not contain a rate of interest payable on the benefit amount wrongfully withheld. Resort must be had to Tex. Ins. Code §542.060, Tex. Fin. Code §302.002, or any other applicable Texas law.

## Request for Attorneys' Fees

86. This suit was made necessary by Golden Rule's wrongful acts and practices. Plaintiff has been forced to retain attorneys to prosecute her claims, for which she has agreed to pay a reasonable attorneys' fee. In this regard, she is entitled to recover her reasonable attorneys' fees and expenses incurred and to be incurred in this action for the full prosecution of this claim through trial and appeal, if any, that are reasonable and necessary for him to obtain the relief he seeks. Accordingly,

Plaintiff further seeks recovery of her reasonable attorneys' fees incurred and to be incurred in the prosecution of this action pursuant to pursuant to Texas Civil Practice and Remedies Code §38.001, *et. seq.*,  Ch. 541 and 542 of the Texas Insurance Code, Tex. Business and Commerce Code §17.49 *et seq.*, and any other applicable Texas law.

## General Claims

87.    All notices required to be given have been given, and all conditions precedent have been satisfied.

## Demand for Jury Trial

88.    Plaintiff demands a jury trial.

## Prayer

For these reasons, Plaintiff requests Golden Rule be cited to appear, and that on final trial, Plaintiff obtains a judgment against Golden Rule in an amount in excess of the minimum jurisdictional limits of this Court, Plaintiff be awarded judgment against Golden Rule for the above described damages in the full amounts allowed by law, together with statutory interest, costs and reasonable attorneys' fees incurred herein, pre-judgment and post-judgment interest at the maximum rate allowed by law, costs of court, equitable relief as above described, and all such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled.


Respectfully submitted,


By:_____/s/ Amar Raval_____
        Amar Raval, TBA #24046682
        S.D. No. 619209

Berg Plummer Johnson & Raval LLP
3700 Buffalo Speedway, Suite 1150
Houston, TX 77098
(713) 526-0200
(832) 615-2665 (Fax)
araval@bergplummer.com

ATTORNEYS FOR PLAINTIFF