# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| ANNA T.,<br>   *Plaintiff*<br><br>v.<br><br>GOLDEN RULE INSURANCE<br>COMPANY and<br>UNITEDHEALTHCARE<br>INSURANCE COMPANY,<br>   *Defendants* | § § § § § § § § § § § <br><br>Case No. 1:22-CV-00715-ADA |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:   THE HONORABLE ALAN D. ALBRIGHT**
       **UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant UnitedHealthcare Insurance Company's Motion to Dismiss Amended Complaint, filed May 25, 2023 (Dkt. 27); Plaintiff's Response to UnitedHealthcare Insurance Company's Motion to Dismiss Amended Complaint, filed June 15, 2023 (Dkt. 31); and Defendant UnitedHealthcare Insurance Company's Reply in Support of Its Motion to Dismiss Amended Complaint, filed July 6, 2023 (Dkt. 34). By Text Order entered July 11, 2023, the District Court referred the motion to this Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas.

## I.   Background

Plaintiff Anna T.,[1] a resident of Austin, Texas, brings this lawsuit to recover insurance benefits under her health insurance policy. Plaintiff alleges that she was a covered beneficiary under an individual health insurance policy ("Policy") issued to her father, Alain T., in December 2007 by

---

[1] Plaintiff has not disclosed her last name because of privacy concerns related to her "severe mental illness." Dkt. 22 ¶ 1.

Defendant Golden Rule Insurance Company ("Golden Rule").[2] Plaintiff's Amended Complaint, Dkt. 22 ¶ 8. Golden Rule is a subsidiary of UnitedHeathcare Insurance Company ("UHC").[3] *Id.* ¶ 34 n.3. Plaintiff alleges that UHC "delegated itself utilization review services for all polices issued by its affiliates." *Id.* ¶ 34. Plaintiff alleges that the Policy covered both outpatient and inpatient behavioral health services.

Plaintiff alleges that in early 2020, when she was a freshman in high school, she began to suffer from anxiety, depression, substance abuse, unhealth family dynamics, poor coping skills, and academic problems. *Id.* ¶ 20. Plaintiff alleges that her therapist advised her to seek treatment for her mental health issues at a residential treatment facility. From February 26, 2020 through May 14, 2020, Plaintiff received treatment for her mental health issues at BlueFire Wilderness Therapy, a residential treatment facility for "troubled teens and young adults struggling with emotional, social and behavioral challenges." *Id.* ¶ 21. From May 14, 2020 to December 3, 2020, Plaintiff received similar treatment at Vista Sage Treatment Center, another residential mental health treatment facility. *Id.* ¶¶ 24-27.

Plaintiff alleges that UHC denied coverage for her stay at the residential treatment facilities because the treatment "was not medically necessary," and that Golden Rule "ratified" UHC's decision. *Id.* ¶¶ 28-31. Plaintiff sued Golden Rule on July 19, 2022 and later amended her complaint, adding UHC as a defendant. In her Amended Complaint, Plaintiff alleges (1) breach of contract against Golden Rule; (2) tortious interference with contract against UHC; (3) common law breach of duty of good faith and fair dealing against both Defendants; and (4) violations of the

---

[2] Golden Rule alleges that it is an Indiana corporation, with its principal place of business in Indianapolis, Indiana. Dkt. 26 ¶ 2.

[3] UHC alleges that is a Connecticut corporation, with its principal place of business in Hartford, Connecticut. Dkt. 27 at 5. Plaintiff does not concede this jurisdictional allegation but does not allege otherwise. Dkt. 31 at 2.

Texas Insurance Code against both Defendants. Plaintiff seeks monetary damages of more than $200,000, punitive damages, and attorneys' fees.

UHC moves the Court to dismiss Plaintiff's claims against it for lack of personal jurisdiction under Rule 12(b)(2) and alternatively for failure to state a claim under Rule 12(b)(6). After UHC filed its motion, Plaintiff voluntarily dismissed her tortious interference and breach of duty of good faith and fair dealing claims against UHC under Rule 41(a). Dkt. 29. Plaintiff opposes dismissal of her remaining claims under the Texas Insurance Code. Dkt. 31.

## II.   Legal Standards

### A.  Rule 12(b)(2)

Under Rule 12(b)(2), a defendant may move to dismiss a suit for lack of personal jurisdiction. "If, as here, the court rules on personal jurisdiction without conducting an evidentiary hearing, the plaintiff bears the burden of establishing only a *prima facie* case of personal jurisdiction." *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). A court "is not obligated to consult only the assertions in the plaintiff's complaint in determining whether a *prima facie* case for jurisdiction has been made. Rather, the district court may consider the contents of the record at the time of the motion . . . ." *Id.* But courts "must accept the plaintiff's uncontroverted allegations, and resolve in [her] favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 233 (5th Cir. 2016).

### B.  Rule 12(b)(6)

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter

"to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is generally limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

### III.   Analysis

UHC argues that Plaintiff's claims against it should be dismissed under Rule 12(b)(2) because the Court lacks personal jurisdiction over it as it is a Connecticut company. Alternatively, UHC argues that Plaintiff's claims should be dismissed under Rule 12(b)(6) for failure to state a plausible claim for relief under the Texas Insurance Code.[4] Because personal jurisdiction is "an essential element of the jurisdiction of a district court without which the court is powerless to proceed to an adjudication," the Court must reach this issue before addressing the merits of Plaintiff's claims. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999).

---

[4] UHC also moves to dismiss Plaintiff's tortious interference and breach of good faith and fair dealing claims. The Court need not address these claims because Plaintiff has dismissed them voluntarily. Dkt. 29.

## A. Personal Jurisdiction

A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant if the state's long-arm statute permits an exercise of jurisdiction over that defendant and an exercise of jurisdiction would comport with the requirements of the Due Process Clause of the Fourteenth Amendment. *Sangha,* 882 F.3d at 101. Because the requirements of the Texas long-arm statute are coextensive with the requirements of the Due Process Clause, the sole inquiry is whether the Court's exercise of personal jurisdiction over the defendant would be consistent with due process. *Id.*

Though personal jurisdiction can be general or specific, the parties only dispute whether this Court has specific jurisdiction over UHC. In evaluating whether due process permits the exercise of specific jurisdiction, courts in the Fifth Circuit consider three factors:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there;
>
> (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and
>
> (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). The plaintiff has the burden of proof on the first two factors to show specific jurisdiction. *Id.* If the plaintiff satisfies the first two prongs, the burden shifts to the defendant to make a "compelling case" that the assertion of jurisdiction is not fair or reasonable. *Id.* All three factors must be satisfied for a court to assert specific jurisdiction over a nonresident defendant.

### 1. UHC has Minimum Contacts with Texas

For there to be minimum contacts to confer specific jurisdiction,

> a defendant must have "purposefully availed himself of the benefits and protections of the forum state" "such that he should reasonably anticipate being haled into court there." That requirement is the "constitutional touchstone" of personal jurisdiction. It "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person."

*Carmona*, 924 F.3d at 193-94 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)) (footnotes omitted).

Plaintiff alleges that UHC purposefully directed its activities at Texas by registering with the Texas Department of Insurance, engaging Texas agents to market and sell health insurance, and selling health insurance to Texas residents. Plaintiff argues that these actions show that UHC "purposefully availed itself of the privilege of conducting its business of providing health insurance and administering health insurance claims in Texas." Dkt. 31 at 5. UHC does not dispute that Plaintiff's allegations satisfy the first specific jurisdiction factor, but argues that Plaintiff has failed to show that her claims arise out of UHC's contacts with Texas.

### 2. Plaintiff's Claims Relate to UHC's Contacts with Texas

To meet the second element of specific personal jurisdiction, Plaintiff must show that her claims "arise out of or relate to" UHC's contacts with Texas. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021). In other words, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (cleaned up).

In *Ford Motor*, the Supreme Court rejected the view "that only a strict causal relationship between the defendant's in-state activity and the litigation will do." 141 S. Ct. at 1026. The Court explained that "arise out of" and "relate to" are two separate methods of evaluating the connection between forum and controversy.

6

> [O]ur most common formulation of the rule demands that the suit "arise out of *or relate to* the defendant's contacts with the forum." The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase "relate to" incorporates real limits, as it must to adequately protect defendants foreign to a forum. But again, we have never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct.

*Id.* (internal citations omitted). To show that the claims are "related to" the defendant's conduct, the plaintiff must only show a "connection" between a plaintiff's suit and a defendant's activities in the forum. *Id.*

UHC argues that Plaintiff's "only allegation in support of specific jurisdiction is that UHIC 'delegated itself utilization review for all policies issued by its affiliates,'" which it contends cannot show the case arises out of UHC's contacts with Texas. Dkt. 27 at 6 (quoting Dkt. 22 ¶ 34). UHC also argues that "Plaintiff's claims do not arise from UHIC's contacts with Texas, but from UHIC's utilization review services provided to [Golden Rule]." Dkt. 34 at 4. As explained above, Plaintiff need not show that her claims arose out of UHC's contacts with Texas; she need only show that her claims "relate to" UHC's contacts with Texas, that is, that there is a "connection" between her claims and UHC's contacts with Texas. *Ford Motor*, 141 S. Ct. at 1026.

Besides alleging that UHC "delegated itself utilization review services for all polices issued by its affiliates," Plaintiff alleges repeatedly in her Amended Complaint that UHC "denied coverage" for her claims and "treatment" and that "Golden Rule ratified UnitedHealthcare's decision[s]." Dkt. 22 ¶¶ 28-31, 35-39. Plaintiff also alleges that Golden Rule and UHC violated Chapters 541 and 542 of the Texas Insurance Code in handling and adjusting her claims by misrepresenting material facts or Policy provisions relating to coverage; failing to make a prompt, fair, and equitable settlement of the claim; failing to provide her with a reasonable explanation for

denying the claim; refusing to pay the claim without conducting a reasonable investigation; knowingly misrepresenting material facts or Policy provisions related to coverage; making misleading statements about the Policy; and knowingly engaging in false, misleading, and deceptive conduct in handling the claim. *Id.* ¶ 76. Plaintiff also alleges that, in its denial letter, UHC made misleading and false statements that her "residential treatment was not medically necessary" and that she lacked "suicidal or homicidal ideations." *Id.* ¶ 78. Plaintiff also alleges that UHC "relied on unqualified medical reviewers to determine that that Anna's treatment was not medically necessary." *Id.* ¶ 80.

Individuals and entities may be liable under the Texas Insurance Code if they "'play a role' in investigating, processing, evaluating, approving, or denying claims." *Risinger Holdings, LLC v. Sentinel Ins. Co.*, 565 F. Supp. 3d 844, 855 (E.D. Tex. 2021).[5] Plaintiff alleges that UHC "played a role" in the alleged violations. Taking her allegations as true, as the Court must, Plaintiff's claims against UHC relate to UHC's contacts with Texas because those claims concern misrepresentation of Texas health insurance policies and mishandling of health insurance claims submitted by Texas residents. *See Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2022 WL 20046134, at *7 (W.D. Tex. Jan. 26, 2022) (finding that plaintiff's consumer protection claims arose out of insurance company's forum-related contacts where claims concerned soliciting health insurance to Texas residents and unlawful telemarketing calls resulting in the sale of defendant's health insurance to Texas residents).

UHC also argues that "simply contracting with another foreign corporation who does business in Texas is insufficient to establish jurisdiction." Dkt. 27 at 6. While this is a correct statement of

---

[5] *See also* TEX. INS. CODE § 541.002(2) (defining "person" as "an individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyd's plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, or adjuster").

the law, *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) (stating that "merely contracting with a resident of the forum state does not establish minimum contacts"), Plaintiff alleges much more than that UHC simply contracted with Golden Rule. The Court finds that Plaintiff has alleged sufficient facts to meet the second requirement for specific jurisdiction.[6]

### 3. UHC Does Not Make a Compelling Case Jurisdiction Is Unfair or Unreasonable

Because Plaintiff has met her burden of satisfying the first two elements of personal jurisdiction, the burden shifts to UHC to make a "compelling case" that the assertion of jurisdiction is not fair or reasonable. *Carmona*, 924 F.3d at 193. UHC does not argue that exercising jurisdiction over it would be unfair or unreasonable, and the Court finds it reasonable for UHC to defend a suit in Texas alleging that it misrepresented insurance policies sold to Texas residents and wrongfully denied insurance claims. *See Callier*, 2022 WL 20046134, at *7 (finding that it was fair and reasonable for health insurance company to defend suit related to health insurance policies sold to Texas residents).

Moreover, Texas has an interest in this case because it involves alleged violations of the Texas Insurance Code in the handling of insurance claims with a Texas resident. *See Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) ("Texas clearly has an interest because the dispute involves a corporation whose principal place of business is in Texas, and the corporation allegedly was defrauded"). The Court finds that it is fair and reasonable to exercise personal jurisdiction over UHC.

---

[6] Although the Court need not reach this issue as it has not been raised, the Court also may have personal jurisdiction over UHC because it is the parent company of Golden Rule. *See Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014) ("[A] corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there.").

#### 4. Conclusion

Plaintiff has met its burden at this stage of the case to establish a prima facie case of specific personal jurisdiction over UHC. Because UHC has not met its burden to make a "compelling case" that the assertion of jurisdiction over it is not fair or reasonable, the Court recommends that UHC's Motion to Dismiss under Rule 12(b)(2) for lack of personal jurisdiction be denied.

### B. Texas Insurance Code Claims

Plaintiff alleges that UHC and Golden Rule violated Chapters 541 and 542 of the Texas Insurance Code ("TIC") by misrepresenting Policy provisions relating to coverage and engaging in "unfair claims settlement practices" in the "handling and adjustment" of her insurance claims. Dkt. 22 ¶ 76. UHC argues that Plaintiff fails to meet the heightened pleading requirements under Rule 9(b) and fails to state a plausible claim for relief.

#### 1. Misrepresentation

Plaintiff alleges that UHC and Golden Rule misrepresented "material facts or policy provisions relating to the coverage at issue," in violation of Chapter 541 of the TIC. Section 541.060(a)(1) prohibits "misrepresenting to a claimant a material fact or policy provision relating to coverage at issue."

Rule 9(b)'s heightened pleading standard extends to misrepresentation claims under the TIC.[7] *See Ngakoue v. Safeco Ins. Co. of Indiana*, No. 1:22-CV-00363-LY, 2022 WL 17814202, at *7 (W.D. Tex. Dec. 19, 2022), *R. & R. adopted*, 2023 WL 2557398 (W.D. Tex. Jan. 5, 2023); *Ramirez v. Allstate Vehicle & Prop. Ins. Co.*, 490 F. Supp. 3d 1092, 1117 (S.D. Tex. 2020). A misrepresentation claim under the TIC also must relate to the details of the Policy, "not the facts

---

[7] Plaintiff's TIC claims that do not allege misrepresentation need not meet Rule 9(b)'s heightened pleading requirements. *See Piazzo v. Allstate Indem. Co.*, 601 F. Supp. 3d 189, 194 (S.D. Tex. 2022) (finding that Rule 9(b) did not apply to plaintiff's failure to conduct a reasonable investigation claim under TIC).

10

giving rise to a claim for coverage." *Messersmith v. Nationwide Mut. Fire Ins. Co.*, 10 F. Supp. 3d 721, 724 (N.D. Tex. 2014); *see also Aguilar v. State Farm Lloyds*, No. 4:15-CV-565-A, 2015 WL 5714654, at *3 (N.D. Tex. Sept. 28, 2015) ("[P]ost loss statements regarding coverage are not misrepresentations under the Insurance Code."). To bring an actionable claim for an alleged misrepresentation by an insurer, the plaintiff must identify the specific misrepresentation the insurer made. *Ramirez v. GEICO*, 548 S.W.3d 761, 772 (Tex. App.—El Paso 2018, pet. denied); *see also Moore v. Whitney-Vaky Ins. Agency*, 966 S.W.2d 690, 692-93 (Tex. App.—San Antonio 1998, no pet.) ("In the absence of some specific misrepresentation by the insurer or agent about the insurance, a policyholder's mistaken belief about the scope or availability of coverage is not generally actionable under the DTPA" or the TIC).

Plaintiff alleges that UHC misrepresented "material facts or policy provisions" relating to coverage by "claim[ing] in the denial letter that Anna's residential treatment was not medically necessary" and that "Anna had a lack of risk to self or others and lack of suicidal or homicidal ideations." *Id.* ¶ 78. Plaintiff alleges that these statements "were intended to mislead and did mislead Anna to a false conclusion about the Policy coverage." *Id.*

Such allegations do not "point to any untrue statement made by [Defendant] regarding the policy or any statement about the policy that misled him." *Texas Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 446 (Tex. 2012). The misrepresentation must be about the details of a policy, not the facts giving rise to a claim for coverage. *Messersmith*, 10 F. Supp. 3d at 724. Thus, to be actionable under § 541.060(a)(1), a defendant must represent that a plaintiff "would receive a particular kind of policy that it did not receive" or have "denied coverage against loss under specific circumstances that it previously had represented would be covered." *Id.* (quoting *U.S. Fire Ins. Co. v. Confederate Air Force*, 16 F.3d 88, 91 (5th Cir. 1994)). The misrepresentations Plaintiff alleges concern the

11

facts giving rise to the policy claim, which is not the "type of misrepresentation that § 541.060(a)(1) protects against." *Id.*[8]

Further, a claim for bad faith under the Texas Insurance Code requires proof of something more than a bona fide coverage dispute. *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 526 (5th Cir. 2015) (affirming district court's grant of judgment as a matter of law to insurer on plaintiff's § 541 claims because "[e]vidence establishing only a bona fide coverage dispute does not demonstrate bad faith").

To allege a viable misrepresentation claim under Chapter 541, Plaintiff also must allege that she "relied" on the alleged misrepresentations and that the "misrepresentations themselves" caused her damages. *Partain v. Mid-Continent Specialty Ins. Servs., Inc.*, 838 F. Supp. 2d 547, 558 (S.D. Tex. 2012) (stating that "reliance and causation" are elements of a misrepresentation claims under Chapter 541), *aff'd sub nom. Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388 (5th Cir. 2014); *see also ValTex Props. LLC v. Cent. Mut. Ins. Co.*, No. 3:20-CV-1992-B, 2020 WL 6781944, at *3 (N.D. Tex. Nov. 18, 2020) ("A misrepresentation claim under the TIC requires reliance on the misrepresentation to the plaintiff's detriment."). Plaintiff does not allege that she relied on UHC's alleged misrepresentations, or that the misrepresentations themselves caused her harm. Indeed, Plaintiff's own allegations show that she did not rely on UHC's statements; instead, she appealed the denial of her claim and filed this suit challenging Defendants' interpretation of the Policy. *See*

---

[8] *See also J.P. Columbus Warehousing, Inc. v. United Fire & Cas. Co.*, No. 5:18-CV-100, 2021 WL 799321, at *11 (S.D. Tex. Jan. 13, 2021) (finding that representations contained in insurer's denial letter did not violate § 551.060(a)(1) where the denial concerned insurer's alleged misrepresentations about the amount and extent of plaintiff's damages); *SJ Auto Brokers, Inc. v. Union Ins. Co.*, No. MO:19-CV-00016-DC, 2019 WL 10369658, at *3 (W.D. Tex. July 24, 2019) (dismissing misrepresentation claim under § 541.060(a)(1) where alleged misrepresentation was "about the facts that gave rise to the policy claim" and not about the policy); *Z&W Enters., LLC v. Great Lakes Reinsurance (U.K.), PLC*, No. 7:16-CV-319, 2016 WL 11021003, at *5 (S.D. Tex. Aug. 12, 2016) (finding that misrepresentations relating to inspection of property, extent of damages, and insurance coverage under policy and its application to plaintiff's claim were not covered under § 541.060(a)(1)).

*Partain*, 838 F. Supp. 2d at 558 (dismissing misrepresentation claims where "Plaintiffs' own allegations are that they refused to rely on Mid-Continent's statements about coverage" and challenged those representations by suing).[9]

For these reasons, the Court finds that Plaintiff's misrepresentation claims does not state a plausible claim for relief.

### 2. Unfair Settlement Practices

TIC § 541.060(a) prohibits individuals or entitles "in the business of insurance" to engage in unfair settlement practices with respect to a claim by an insured by: (1) "failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of . . . a claim with respect to which the insurer's liability has become reasonably clear;" (2) "failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;" and (3) "refusing to pay a claim without conducting a reasonable investigation with respect to the claim." Plaintiff alleges that UHC violated all these prohibitions. Dkt. 22 ¶ 76.

UHC argues that Plaintiff's claims under Section 541.060(a) fail as a matter of law because "UHIC did not owe a duty to pay Plaintiff benefits or handle her claim, because UHIC was not her insurer and did not issue the Policy." Dkt. 34 at 5. UHC contends that only Golden Rule had a duty to Plaintiff because it was the entity that issued the Policy.

UHC is mistaken that only insurers can be held liable under the TIC. UHC could be liable if it "played a role" in investigating, processing, evaluating, approving, or denying Plaintiff's claims.

---

[9] *See also Wheeler v. Safeco Ins. Co. of Indiana*, No. SA-21-CV-00343-XR, 2022 WL 1295288, at *7 (W.D. Tex. Apr. 29, 2022) (granting summary judgment on Section 541 misrepresentation claim when plaintiff offered no evidence she relied on alleged misrepresentation for any purpose or that the misrepresentation caused her any injury); *ValTex Props.*, 2020 WL 6781944, at *3 (rejecting plaintiff's TIC misrepresentation claims when plaintiff did not allege "it relied to its detriment on any of the misrepresentations").

13

*Risinger Holdings*, 565 F. Supp. 3d at 855. Section 541.060(a) applies to individuals or entities "engaged in the business of insurance"; *see also id.* § 541.002 (defining liable persons under the TIC as a "legal entity engaged in the business of insurance, including an agent, broker, or adjuster"). Both the Fifth Circuit and the Texas Supreme Court have found that non-insurers engaged in the business of insurance may be held liable under Chapter 541. *See Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 282 (5th Cir. 2007) ("Texas law clearly authorizes [Chapter 541] actions against insurance adjusters in their individual capacities."); *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 487 (Tex. 1998) (holding that Chapter 541 "provides a cause of action against insurance company employees whose job duties call for them to engage in the business of insurance").[10] The Texas Supreme Court also has held that "the business of insurance includes the investigation and adjustment of claims and losses." *Vail v. Tex. Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 132 (Tex. 1988) (citations omitted). In addition, UHC, as the parent company of UHC, could be held liable if Golden Rule's actions are imputed to it.

Because the Court must accept Plaintiff's allegations as true for the Rule 12(b)(6) analysis, Plaintiff has alleged plausible unfair settlement claims against UHC under the TIC. Accordingly, the Court recommends that UHC's Motion to Dismiss Plaintiff's TIC unfair settlement practices claims should be denied.

---

[10] In support of its argument that only insurers have duties under the TIC, UHC relies on *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F3d 256, 262 (5th Cir. 1995), in which the Fifth Circuit affirmed the dismissal of the plaintiff's common-law good faith and fair dealing claim against an insurance agent when there was no "special relationship" between the parties such as a contract. UHC cannot rely on *Cavallini* because it involved a good faith and fair dealing claim under the common law, not the TIC, and its facts are distinguishable from this case.

## IV. Recommendation

For these reasons, this Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART AND DENY IN PART** Defendant UnitedHealthcare Insurance Company's Motion to Dismiss (Dkt. 27), as follows: **DENY** Defendant's Rule 12(b)(2) Motion to Dismiss for lack of personal jurisdiction without prejudice; **GRANT** Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's Misrepresentation claims under the TIC; and **DENY** Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's unfair settlement practices claims under the TIC.

It is **ORDERED** that the Clerk remove this case from the Magistrate Judge's docket and **RETURN** it to the docket of the Honorable Alan D. Albright.

## V. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on October 12, 2023.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE